# Dunham *against* Kinnear.

A party defendant cannot disaffirm an act of the plaintiff, as being fraudulent and void, and at the same time predicate a claim, as matter of defence, upon it.

In an action for hire, a contract of hire must be proved ; proof of a loan of the property will not support the action.

ERROR to *Warren* county.

This was an action of assumpsit, brought by the defendant in error, against the plaintiff in error, in the court below. The declaration contained two counts, one for the price of a wagon sold and delivered, and the other for the hire of a wagon. The facts from the evidence appeared to be, that *Kinnear* was indebted to *Dunham*, and agreed to deliver him a wagon, at a certain price, which exceeded considerably the amount of the debt owing by *Kinnear* to *Dunham*. The debt was to be deducted out of the price of the wagon. The wagon was brought to *Dunham*, when the parties settled and adjusted their accounts, which had arisen between them anterior to that date, but disagreeing about the time at which *Dunham* should pay to *Kinnear* the balance of the price of the wagon, after deducting the balance which was coming to *Dunham* ; on the settlement of their accounts, they agreed to record the contract for the sale of the wagon, and that *Kinnear* should give *Dunham* his note for the payment of this balance, three days after that date with interest, which was accordingly given. The wagon, by agreement between them at the same time, was left in the possession of *Dun-*

[Dunham v. Kinnear.]

*ham* upon loan for a short time. A few weeks afterwards, *Kinnear* sent for the wagon, but, being abroad on use, it was not obtained. Shortly after this, *Kinnear* sold it to a third person, to whom he gave an order upon *Dunham* for it. The order was presented to *Dunham*, but he refused to deliver the wagon, saying that he would not give it up to either him or *Kinnear*, until he was paid the debt which *Kinnear* owed him. *Kinnear* then demanded the wagon in person himself, but *Dunham* still refused to let him have it, until he paid the debt. *Kinnear* told him that he would make him pay hire for every day he detained it. After this, *Dunham* sent the wagon into Warren county, in which *Kinnear* resided, as he said, for a load of shingles. It, however, was left there, and *Dunham*, shortly afterwards, went to the place where it was left, and removed it some distance off into the woods, to prevent *Kinnear* from finding it, as he alleged. A certain *Alexander Thompson* had a judgment against *Kinnear*, before *Samuel M'Gee*, a justice of Warren county, amounting with interest and costs to about 15 dollars. *M'Gee*, the justice, sent word to *Thompson* to direct an execution to be issued, or he thought he would lose his money. About this time *Dunham* came to the house of *Thompson*, and said, as *Thompson* understood him, that he was going to *Kinnear's* for money. *Thompson* told *Dunham* of his judgment againt *Kinnear*, and said he would write to have an execution issued upon it ; *Dunham* then agreed to buy the judgment of *Thompson*, who gave *Dunham* an authority to issue the execution, and a receipt for the amount of the judgment, upon *Dunham's* promise to pay it. *Dunham* did not disclose to *Thompson* any thing about the wagon.

After this, *Dunham* caused an execution to be sued out upon the judgment, which he put into the hands of a constable, whom he took to the wagon, about ten miles from *Kinnear's* residence, and directed him to levy upon it, as *Kinnear's* property. The constable, after being indemnified by *Dunham*, did so. He then advertised the wagon for sale, as required by law, and sold it to *Dunham*, for 21 dollars, he being the highest bidder. *Dunham* produced *Thompson's* receipt for the debt and interest due on the judgment, and after deducting the amount of it from the amount of sale, paid the difference to the constable, and the amount of the debt and interest he paid to *Thompson*.

*Kinnear's* note to *Dunham* was given on the 17th of October 1828, for the payment of 18 dollars and 20 cents, three days after that date with interest : and at the same time the wagon was loaned by *Kinnear* to *Dunham*. The wagon was sold by the constable on the 14th of January following, and was proved to be worth 45 dollars; and that the usual hire given for such a wagon was 50 cents per day.

It was also proved that *Dunham* said at different times to different persons that *he would pay Kinnear whatever the wagon was fairly worth*, if he would call and *settle with him*, notwithstanding the sale

[Dunham v. Kinnear.]

by the constable.    This proof was made on the part of *Kinnear*, the defendant in error.

Upon this state of facts the court below charged the jury, that " the plaintiff's claim was for the hire of a wagon, and for the price and value of the same wagon.    The defendant, in defence, showed he bought the same at constable's sale, under an execution, at the suit of *A. Thompson :* and one question raised, for the decision of the jury, is, Was that sale and purchase by the defendant fraudulent.    *If the jury should be satisfied that it was an actual fraud, practised by the unfair management of defendant on the plaintiff, it is void ; and if so, the money which the defendant paid to the constable or A. Thompson, is not to be taken into consideration as a set-off, as claimed by defendant.*    Defendant has also shown a note of 18 dollars and 20 cents against plaintiff, and this being undisputed, is allowed as a credit to defendant.    But plaintiff claims 50 cents a day for the hire of a wagon from the time defendant obtained it from plaintiff on the 16th of October 1828, until the sale of it on the 20th of January 1829; and also the value of the wagon at the time of sale.    For the jury to allow both would be unreasonable ; as it would allow plaintiff to claim for the same wagon so largely beyond its value.    Although 50 cents a day might be a fair rate of hire per day for a few days or a week, yet it would seem unreasonable for plaintiff to claim that rate per day, if he claim for several months.    No man hires a wagon at that rate per day to keep it for months.    *I do not say that plaintiff may not recover for a short period in addition to the value of the wagon.*    The subject of the sale of the wagon by the constable, in Warren county, by defendant's procurement, when it had been left in his possession in Crawford county, and all the various circumstances, are before the jury for their decision; whether it is *an actual fraud and a void sale, and if so,* they will *judge on the proof what ought to be allowed for the wagon after making the deduction of the note in evidence.*"

After the delivery of this charge to the jury, they returned a verdict in favour of the plaintiff below for 58 dollars damages, besides costs of suit ; upon which the court rendered a judgment.

The errors in the charge of the court below are, that the court told the jury that if they should believe that the plaintiff in error was guilty of an actual fraud in procuring a sale to be made of the wagon by the constable, that the sale was void, and that they ought not to allow him as a set-off the money that he paid to *Thompson* for the judgment against the defendant in error, nor yet the money that was paid to the constable.

Again, that although the court below told the jury that " no man hired a wagon at the rate of ·50 cents a day for months," yet the president of the court qualified it by saying, " I do not say that plaintiff may not recover for a short period in addition to the value of the wagon."

*Pearson,* for plaintiff in error.

[Dunham v. Kinnear.]

*Galbreath,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—It must be recollected that the plaintiff below founded his claims against the defendant exclusively upon contracts or agreements made between them. First, upon a contract by which the plaintiff below, as he alleged, sold and delivered a wagon to the defendant. And secondly, upon a contract by which he hired his wagon to the defendant at 50 cents per day.

As to the sale of the wagon, it appeared from the evidence that it had been the property of the plaintiff below, without dispute, and that after the sale made of it by the constable, that the defendant below had said and repeated at different times to different persons, " that he would pay *Kinnear,* the plaintiff below, whatever the wagon was fairly worth, *if he would call and settle with him, notwithstanding the sale by the constable.*" It was not pretended that there was any other promise made by *Dunham* to pay *Kinnear* for the wagon; and of course nothing beside this upon which he could support or claim any thing under the first count in his declaration for the sale and delivery of the wagon. But this was not an absolute unconditional promise of *Dunham* to pay *Kinnear* what the wagon was fairly worth. He promised to do so only upon condition " *if he would call and settle with him.*" Now it does not appear that *Dunham* had any claim against *Kinnear* but the amount of the note, and the money which he had paid for *Thompson's* judgment, and to the constable, upon the sale of the wagon made under that judgment. When we refer to those things, as disclosed by the evidence given on the trial which had taken place between these parties, it is difficult to put any other construction upon the promise of *Dunham* as proved, than that he would allow and pay to *Kinnear* a fair price for the wagon, *if he would settle, and let the amount of the note and the amount of the money which Dunham had paid for him on account of Thompson's judgment, be deducted out of the price of the wagon.* Why should *Dunham* have qualified his promise by saying " *if he would call and settle with him.*" These words cannot be considered as having been superadded without any meaning on the part of *Dunham.* It seems to be admitted that he must have had an allusion to the amount of the note; but why allude to the note more than to the money which he had paid on account of *Thompson's* judgment; for he never seems to have intimated that he did not consider himself justly entitled to the last as well as the first, or that he was willing to relinquish it. *Dunham* had a right, and the power to qualify his promise as he pleased; and upon the other hand, *Kinnear* was at liberty to accept of it or not, as he pleased. He had no power to make it binding upon *Dunham* beyond what, or otherwise than as, he intended. Whether such was the meaning and intention of *Dunham* in making his promise to *Kinnear,* as I have suggested, ought to have been submitted by the court below in their charge to the jury, to be de-

cided by them as a matter of fact, and if they should find that such was *Dunham's* intention and understanding of his promise at the time he made it, to have told them, as matter of law, that they were bound to set a *fair price, according to the evidence*, upon the wagon, and to deduct from that the amount of the note, and the amount of the money paid on account of *Thompson's* judgment and the execution upon it; and if these two last sums should fall short of a fair price for the wagon, to return a verdict in favour of *Kinnear* for the difference; or if they should exceed the price of the wagon, to return a verdict in favour of *Dunham* for the excess, whatever it might be.

But under another view of this part of the charge, there was clearly error in it.   Whether *Dunham* was guilty of a fraud or not in procuring a sale to be made of the wagon under *Thompson's* judgment, he had an undoubted and just right to be paid the amount of it by *Kinnear*, if *Kinnear* took advantage of such fraud, in case it had been committed, and upon that ground set the constable's sale aside, and insisted upon having his wagon returned to him or being paid full price for it : *Kinnear* can not be permitted to blow hot and cold with the same breath ; that is to say, that the sale of the wagon by the constable as *his property* shall be *good* to satisfy and extinguish the judgment of *Thompson* that was assigned to *Dunham*, but at the same time *void*, that he may recover a full price for it from *Dunham* and put it into his pocket.   If he then annuls the sale for the fraud practised, as is alleged by *Dunham*, the judgment must be considered as standing in full force and in no wise satisfied, and *Kinnear* bound to pay or satisfy it to *Dunham*, who bought it, as he had an unquestionable right to do, of *Thompson*, the plaintiff in it.   Hence it would follow, that *Dunham*, in case of *Kinnear's* avoiding the sale, would have a right to issue a new execution upon the judgment, in order to obtain satisfaction of it, or to set off the amount of it in this action at his election.   The surplus money which he paid to the constable beyond satisfying all the costs, he would be entitled to receive back from the constable or justice, or whoever may have it, unless *Kinnear* himself has received it, and in that case *Dunham* would be entitled to defalk in this action, not only the debt and interest, but all the costs, excepting the costs of sale incurred upon the judgment, together with the surplus money paid to the constable.   If the sale of the constable be fraudulent and void, and was brought about by *Dunham*, he ought to pay the costs of the sale out of his own pocket, but to lose no more.

In what the court below said to the jury on the subject of hiring the wagon, there was palpable error, because there is not a tittle of testimony to support the count laid in the declaration for that claim, or going to show that there ever was any agreement or contract for hiring the wagon by *Dunham* of *Kinnear*.   The only evidence of contract given by which *Dunham* was to have the use of the wagon, was a loan, which is quite the opposite of hiring, and must be so understood by every one.   But the president told the jury, " I do not

[Dunham v. Kinnear.]

say that the plaintiff may not recover for a short period, in addition to the value of the wagon." This was in effect telling the jury that "if they thought proper, they might allow the plaintiff below a hire of 50 cents per day for a short period." And it would seem, from the amount of the verdict, that they did do so. The full value or price of the wagon, according to the evidence, was 45 dollars, and beyond this, with its interest up to the time of trial, in an action of assumpsit, or even in trover, the jury had no right to go in assessing the damages. Adding interest then to the 45 dollars up to the time of trial, would have brought the price of the wagon to nearly 50 dollars; from which, according to the direction of the court, the note of 18 dollars and 20 cents, with its interest, which was 20 dollars, was to be deducted, which would have left a balance of 30 dollars: but the jury gave a verdict for 58 dollars, nearly double 30 dollars. Here are 28 dollars added by the jury for the hire of the wagon. There being no evidence of contract for the hire of the wagon, the court erred in directing them that they might allow any thing on that count in the declaration for the plaintiff below.

Judgment reversed, and a *venire facias de novo* awarded.